IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

SOUTHERN COAL CORPORATION,

    Plaintiff,

v.

IEG PTY, LTD,

INTERMARINE, LLC,

BBC CHARTERING & LOGISTIC GMBH & CO. KG,

    and

MS "ANITA" KAI FREESE

    Defendants.

CIVIL NO. 2:14cv617

## OPINION AND ORDER

This matter comes before the Court upon the filing of two motions: (1) BBC Chartering & Logistic GmbH & Co. KG's Motion to Dismiss for Failure to State a Claim in the Second Amended Complaint based on time barring of the action by at ECF No. 117 and (2) Intermarine, LLC's Motion to Dismiss for Failure to State a Claim in the Second Amended Complaint by virtue of failure to allege sufficient facts to pierce the corporate veil at ECF No. 115.

For the reasons stated herein, the Court (1) **GRANTS** BBC Chartering's Motion to Dismiss for Failure to State a Claim by virtue of the time barring of the claims against it in the Second Amended Complaint at ECF No. 117; and (2) **DENIES** Intermarine's Motion to Dismiss for Failure to State a Claim by a finding of sufficient facts alleged against Intermarine in the Second Amended Complaint regardless of piercing the corporate veil at ECF No. 115.

1

## I. FACTUAL AND PROCEDURAL HISTORY[1]

In early 2011, Southern Coal Corporation ("Southern") acquired two large P&H MkII 2800 electric mining shovels ("Shovels") worth several million dollars each. Second Am. Compl. at ¶ 10; ECF No. 109 at 3. The Shovels were purchased and repaired in Australia with the intention of shipping them to the United States in the near future. Id. at ¶ 13. Through its agent AAMAC Industries, Pty. Ltd. ("AAMAC"), Southern contracted with IEG Pty., Ltd. ("IEG") to arrange for the shipping of mining shovels (the "Shovels") from Newcastle, Australia to Norfolk, Virginia. Id. at ¶ 16. IEG executed a Bimco Liner Booking Note ("First Liner Booking Note") with Southern on or about August 15, 2011. Id. at Ex. 1. Soon after, on or about September 23, 2011, IEG executed a liner booking note ("Second Liner Booking Note") with the BBC RIO GRANDE aka the M/V GABRIELLE SCAN ("RIO GRANDE") arranging for carriage of the Shovels. Id. at Ex. 2. In fall 2011, the RIO GRANDE was operated by ScanTrans Holdings ("ScanTrans"). Id. at ¶ 27. The RIO GRANDE commenced its journey to the United States with the Shovels on October 12, 2011. Id. at ¶ 38. At this time the First Bill of Lading was issued. Id.

By early November 2011, the RIO GRANDE diverted to Masan, Republic of Korea. Id. at ¶ 43. When the RIO GRANDE arrived in Masan, the Shovels were placed ashore, fully exposed to the weather. Id. at ¶ 52. On or about November 18, 2011, Sourthern was advised that the shovels were in Korea. Id. at ¶ 46. On December 6, 2011, after several weeks ashore, the shovels were loaded aboard the MV CLIPPER NEW HAVEN (the "CLIPPER"), which was operated by GmbH & Co. KG ("BBC Chartering"). Id. at ¶ 53. At this time the Second Bill of Lading was issued. Id. at ¶ 54. The notes of the Second Bill of Lading indicated that the Shovels

---

[1] The following facts are taken from the Second Amended Complaint, which for the purposes of these motions is presumed true.

were already in bad shape prior to being loaded onto the CLIPPER. Id. at ¶ 54, Ex. 4. The Shovels were transported above deck for the remainder of the journey. Id. at 55.

On or about January 13, 2012, the CLIPPER arrived in Hampton Roads, Virginia and landed the Shovels the following day. Id. at ¶ 58–59. Upon their arrival, however, Southern found the Shovels were badly damaged. Id. at ¶ 60. On January 21, 2014, Southern filed its first complaint in the Eastern District of Virginia. This complaint has since been amended twice with leave of the Court.

## II. STANDARD OF REVIEW

Where a plaintiff fails to state a claim upon which relief can be granted, or otherwise fails to meet the requirements of Rule 8(a)(2), Federal Rule of Civil Procedure 12(b)(6) permits a party to move the court to dismiss an action. Federal Rule of Civil Procedure 8(a)(2) mandates that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This directive has not been interpreted to require "detailed factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). It does require, however, a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to allow such an inference. Id. (citing Twombly, 550 U.S. at 555).

The function of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Neitzke v. Williams, 409 U.S. 319, 326–27 (1989). The Fourth Circuit has held that a motion to dismiss under Rule 12(b)(6) should be granted only in "very limited circumstances." Rogers v. Jefferson–Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989). However, dismissal is appropriate if it appears that the plaintiff is not "entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Harrison v. United

States Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988) (citation omitted); Davis v. Hudeins, 896 F.Supp. 561, 566 (E.D. Va. 1995) (citing Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). When reviewing the legal sufficiency of a complaint, the Court must construe the factual allegations "in the light most favorable to plaintiff." Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991) (quotation omitted); Davis, 896 F.Supp. at 566 (citing Martin Marietta Corp. v. Int'l Telecomm. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1992)). Legal conclusions, which provide the complaint's framework, are not entitled to the assumption of truth if they are not supported by factual allegations. Iqbal, 556 U.S. at 664.

Both BBC Chartering and Intermarine have submitted motions to dismiss under Rule 12(b)(6). ECF No. 117, ECF No. 115. BBC Chartering claims that Southern failed to state a claim upon which relief may be granted due to either the time-bar of the Carriage of Goods by Sea Act or the doctrine of laches. ECF No. 118. Intermarine claims failure to state a claim due to Southern's failure to allege sufficient information to pierce the corporate veil. ECF No. 116.

### III. BBC CHARTERING'S MOTION TO DISMISS

BBC Chartering & Logistic GmbH & Co. KG ("BBC") has submitted several arguments under which it should be removed from the suit due to untimeliness of the suit. First, BBC claims that either claim against it is time-barred under the provisions of the Carriage of Goods by Sea Act ("COGSA"). ECF No. 118 at 7. Second, BBC argues that even if the Court were not to apply COGSA, either claim against it is barred by laches under the Harter Act. Id. at 11. Southern refutes these claims and even the veracity of the Second Bill of Lading which it attached to its complaint. ECF No. 123 at 4.

For the reasons stated herein, this Court finds that the Second Bill of Lading made by an intermediary governs the obligations and limitations of liability between the parties is enforceable against Southern as intermediaries may contract for liability limitations. The Second

Bill of Lading effectively applies the liability limitations of COGSA by contract. Therefore, the present suit was subject to the time bar of COGSA and is not subject to laches analysis under the Harter Act. No deviation from the Second Bill of Lading occurred and as such the limitations of COGSA were still in effect. Accordingly, this court must grant BBC Chartering's Motion to Dismiss. ECF No. 117.

### A. INTERMEDIARIES

Southern calls into question the enforceability of the Second Bill of Lading as "if a new contract of carriage was formed it was with a different party, *not* Southern" and "Southern did not negotiate the BBC Bill and was unaware of its contents until the vessel departed Masan, Korea." ECF No. 123 at 4. In fact Southern claims it has no evidence that neither of its agents (AAMAC and IEG) ever negotiated this bill of lading. Id. In the alternative to a breach of contract of carriage claim Southern also alleges a breach of bailment claim on the basis that there was no bill of lading governing the obligations between the parties, merely a general maritime bailment. Second Am. Compl. at ¶ 99–105, ECF No. 109 at 15.

Southern's objections to the Second Bill of Lading are unfounded. Southern nor its agents were required to negotiate an enforceable Second Bill of Lading with BBC Chartering, all that was required was an intermediary which had been entrusted with the goods (in this case the Shovels). As stated by the Supreme Court in Norfolk S. Ry. Co. v. Kirby,

> In Great Northern, because the intermediary had been "entrusted with goods to be shipped by railway, and, nothing to the contrary appearing, the carrier had the right to assume that [the intermediary] could agree upon the terms of the shipment." Likewise, here we hold that intermediaries, entrusted with goods, are "agents" only in their ability to contract for liability limitations with carriers downstream.

Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 34; citing Great N. R. Co. v. O'Connor, 232 U.S. 508, 514 (1914).

5

The Court went on to hold that intermediaries may contract with the carrier for liability limitations:

> When an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed. The intermediary is certainly not automatically empowered to be the cargo owner's agent in every sense. That would be unsustainable. **But when it comes to liability limitations for negligence resulting in damage, an intermediary can negotiate reliable and enforceable agreements with the carriers it engages.**

Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 33 (2004) (emphasis added).

BBC Chartering contracted for liability limitations as a secondary carrier with an intermediary that had control over the Shovels as evidenced by the loading of the Shovels on the CLIPPER and the carriage of the Shovels to Virginia. Second Am. Compl. at ¶53–59. As such, BBC may rely on the enforceability of the Second Bill of Lading and the liability limitations of the Second Bill of Lading. There is no cognizable general breach of bailment claim against BBC Chartering.

### B. THE INCORPORATION OF COGSA BY CONTRACT

BBC Chartering's Second Bill of Lading attempts to apply the liability limitations of COGSA. Second Am. Compl. Ex. 4; ECF No. 109, Ex. 4 ("108 pkgs carried on deck at shipper's/charter's/receiver's risk as to perils inherent in such carriage, any warranty of seaworthiness of the vessel expressly waived by the shipper/charterer/receiver, and in all other respects **subject to the provisions of the United States Carriage of Goods by Sea Act, 1936.**")(emphasis added). As such BBC Chartering argues any suit against it is time barred and should be dismissed. ECF No. 117 at 7. Southern contends that COGSA's statute of limitations provision, which only applies by contract, is inconsistent with the Harter Act which applies by force of law. ECF No. 123 at 6. Therefore, Southern argues the application COGSA's liability

limitations is nullified by the Harter Act's prohibition on provisions avoiding liability for negligence. ECF No. 123 at 5; See 46 U.S.C. § 30704.

The Carriage of Goods by Sea Act ("COGSA") applies by force of law to carriages to or from a port in the United States to or from those outside of the United States when goods are carried below deck. 46 U.S.C. § 30701, note § 1(c).[2] As the Shovels were carried above deck during the carriage from Masan, Korea to Norfolk, Virginia, COGSA does not apply by force of law. Second Am. Compl. ¶ 55, ECF No. 109 at 9. However, COGSA may also be applied as a provision of a contract. United States v. M/V Marilena P, 433 F.2d 164, 170 (4th Cir. 1969). When applied by contract provisions of COGSA do not have statute rank, but rather apply as terms of the contract. Commonwealth Petrochemicals Inc. v. S/S Puerto Rico, 607 F.2d 322, 325 (4th Cir. 1979). Accordingly, the incorporation of COGSA in Second Bill of Lading is enforceable against Southern as a contract provision.

### C. THE TIME BAR OF COGSA

Under COGSA, suits against shippers must be brought within a reasonable amount of time. COGSA states that,

> In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage *unless suit is brought within one year after delivery of the goods* or the date when the goods should have been delivered: Provided, That if a notice of loss or damage, either apparent or concealed, is not given as provided for in this section, that fact shall not affect or prejudice the right of the shipper to bring suit within one year after the delivery of the goods or the date when the goods should have been delivered."

46 U.S.C. § 30701, note § 3(6) (emphasis added).

---

[2] In the general revision and enactment into positive law of the Shipping Code of Title 46 in 2006, COGSA was not restated, repealed, or omitted. 46 U.S.C. § 30701, note. However, COGSA was not restored to its former codified location in the code. As such, COGSA is now an uncodified provision that appears as a note to 46 U.S.C. § 30701.

Southern argues that as COGSA merely applies by contract rather than ex priori vigore, this contract should instead be governed by the Harter Act's contrary lack of a statute of limitations and should be merely subject to laches. Additionally, Southern contends that failure to apply laches rather than the time bar of COGSA would a direct violation of the Harter Act's prohibition on provisions avoiding liability for negligence. However, the Fourth Circuit has stated that COGSA may be incorporated into a contract to apply to elements of the shipping contract that would traditionally fall under the Harter Act. See Schramm, Inc. v. Shipco Transp., Inc., 364 F.3d 560, 565 (4th Cir. 2004)("The "discharge" of goods from a vessel thus marks the transition of coverage from COGSA to the Harter Act, unless the parties have agreed to extend COGSA, and the Harter Act then applies until delivery is made."). There appear to be no inconsistencies with the Harter Act, as COGSA does not overturn an existing time bar for suit but rather applies one where the Harter Act was previously silent.[3] As such, the incorporation of COGSA by contract would positively apply a time bar limitation on liability.

Beyond its Harter Act claims, Southern argues that BBC Chartering is not entitled to invoke the time bar due to unreasonable deviation for the carriage of the Shovels on deck rather than below deck. ECF No. 118 at 8. The Court finds no such unreasonable deviation by BBC Chartering in this case. The Second Bill of Lading clearly permitted BBC Chartering to carry the Shovels above deck. Second Am. Compl., Ex. 4; ECF No. 109, Ex. 4 at 2. BBC Chartering made no unreasonable deviation from its bill of lading and is permitted to claim the liability limitations therein.

---

[3] There appears to be a split as to whether contractual extensions of the coverage of COGSA necessarily overpower the application of the Harter Act. The Ninth Circuit unequivocally states that "[w]hen COGSA is incorporated by contract, it, rather than the Harter Act, controls." N. River Ins. Co. v. Fed Sea/Fed Pac Line, 647 F.2d 985, 987 (9th Cir. 1981). The Fifth Circuit, on the other hand, has held that when COGSA is incorporated by contract, "any inconsistency with the Harter Act must yield to the Harter Act." Uncle Ben's Int'l Div. of Uncle Ben's, Inc. v. Hapag-Lloyd Aktiengesellschaft, 855 F.2d 215, 217 (5th Cir. 1988). As there is no inconsistency in the present suit, the Court need not reach this issue.

Given the applicability of COGSA to this claim, a simple review of the facts alleged in the Second Amended Complaint reveals that Southern's claim against BBC Chartering must be time barred. On January 14, 2012, Southern received the Shovels in Norfolk, VA. Second Am. Compl. ¶ 59, ECF No. 109. At that time, Southern knew the shovels were badly damaged. Id. ¶ 59. Yet, Southern waited over two years to file a Complaint. The first complaint in this suit was filed January 21, 2014. Compl., ECF No. 1. BBC Chartering was not joined in the suit until the first amended complaint on December 30, 2014. ECF No. 65. There is no question that Southern's claims were brought more than a year after the delivery of goods. Accordingly, Southern's claims against BBC Chartering are time barred and this Court must **GRANT** BBC Chartering's Motion to Dismiss. ECF No. 117.

### IV. INTERMARINE'S MOTION TO DISMISS

Defendant, Intermarine, LLC ("Intermarine") has submitted a motion to dismiss for failure to state a claim against Southern. ECF No. 116. In the motion, Intermarine claims that Plaintiff has failed to state a claim against Intermarine and merely states a claim against a potential subsidiary of a company that merged with Intermarine. ECF No. 117 at 3. Intermarine relies on the Second Liner Booking Note to claim that contrary to the allegations of the Second Amended Complaint, only ScanTrans *Shipping & Chartering Sdn. Bhd.* was involved with the suit while Intermarine is alleged to have merged with ScanTrans *Holding A/S*. ECF No. 166 at 3. Intermarine claims the Second Liner Booking Note includes only the name of ScanTrans Shipping & Chartering Sdn. Bhd., and that this exhibit must be favored over the contrary allegations contained within the complaint. Id. at 4. Intermarine then makes considerable argument that in this situation, Southern would have to pierce the corporate veil to find any liability of Intermarine for the actions of ScanTrans Shipping & Chartering Sdn. Bhd. Id. at 4.

This Court must rely on the face of the complaint to determine if Southern has alleged sufficient factual content by which the court may draw a reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When reviewing this legal sufficiency, the Court must view the factual allegations "in the light most favorable to the plaintiff." Shatz, 943 F.2d at 489. As such, this Court must consider only if the facts alleged in the Second Amended Complaint are sufficient to draw an inference that Intermarine is liable for the alleged misconduct.

The Complaint alleges as follows: "In the fall of 2011, Anita Kai Freese operated and/or managed the BBC RIO GRANDE through ScanTrans Holding A/S (hereinafter, "ScanTrans"). [...] In August of 2012, ScanTrans merged into Intermarine, LLC. The merged entity is now Intermarine, LLC." Second Am. Compl. ¶ 27–29. The complaint goes onto state a basis for liability, "ScanTrans (now Intermarine) acted in the role of carrier for the Shovels' ocean shipment from Australia to Virginia," and that

> As the ocean carrier accepting the shovels for shipment to Virginia, ScanTrans is liable to Southern, as the Shovel's owner and consignee of their shipment to Virginia, for the damage sustained by the Shovels after their delivery to ScanTrans in Australia and before their delivery to Southern in Virginia at the end of their voyage to the United States.

Second Am. Compl. ¶¶ 86, 90, ECF No. 109 at 13.

The Complaint does include the Second Liner Booking Note which contains reference to ScanTrans Shipping & Chartering Sdn. Bhd. Second. Am. Compl. at Ex. 2; ECF No. 109 at Ex. 2. However, Southern relies not on the Second Liner Booking Note, but rather the First Bill of Lading as a basis of liability for ScanTrans Holding A/S and thus Intermarine as the merged entity. Id. ¶ 40 ("The First Bill bears a Bill of Lading Number beginning with "SCN" which, on information and belief, is a Standard Carrier Alphanumeric Code (SCAC) assigned to and by

ScanTrans."). As the First Bill of Lading does not contradict the allegations of the complaint and the Court must view the factual allegations made in the complaint in the light most favorable to Southern, this Court cannot hold at this time there is no cognizable claim against Intermarine. Shatz, 943 F.2d at 489.

The Court need not reach the issue of whether Southern has plead sufficient information to meet Fourth Circuit's requirements to pierce the corporate veil. None of the pleaded allegations attempt to hold Intermarine liable for the actions of ScanTrans Shipping & Chartering Sdn. Bhd. All liability alleged in the complaint is based not on the Second Liner Booking Note, but rather on the First Bill of Lading and the alphanumeric code found therein. This does not foreclose this argument in future summary judgment motions as Intermarine may be able to provide contrary evidence and thus disprove either the merger alleged by Southern or the involvement of ScanTrans Holding A/S. Nor does this order presume that Southern will be able to prove liability of Intermarine at trial. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Southern has submitted a well-pleaded complaint that states a cognizable claim against Intermarine if the Court assumes all alleged facts are true. As such, Intermarine's Motion to Dismiss must be **DENIED**.

Accordingly the Court (1) **GRANTS** BBC Chartering's Motion to Dismiss for Failure to State a Claim in the Second Amended Complaint at ECF No. 117; and (2) **DENIES** Intermarine's Motion to Dismiss for Failure to State a Claim at ECF No. 115.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/

Robert G. Doumar
Senior United States District Judge

_____
UNITED STATES DISTRICT JUDGE

Norfolk, VA
December 4, 2015