IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



SOUTHERN COAL CORPORATION,

     Plaintiff,

     v.                            CIVIL NO. 2:14cv617

IEG PTY, LTD,

     and

MS "ANITA" KAI FREESE GMBH &
CO. KG,

     Defendants.

## OPINION AND ORDER

This matter comes before the Court upon the filing of "Motion to Dismiss Count VI of

Plaintiff Southern Coal Corporation's ("Southern") Second Amended Complaint" by Ms "Anita"

Kai Freese GmbH & Co. KG ("Freese"). ECF No. 139. For the reasons stated herein, the Court

**CONSTRUES** Freese's Motion as a Motion to Compel Arbitration and **GRANTS** the motion to

compel. ECF No. 139.

### I.    PROCEDURAL BACKGROUND

There is a significant procedural history in this case, however, the only relevant portions

to the present motion are recounted here. On January 21, 2014, Southern brought a suit in the

Western District of Virginia against IEG, SENRAC, and GDL Enterprises. After both GDL

Enterprises and SENRAC each filed a Motion to Dismiss, ECF Nos. 15, 18, Southern voluntarily

dismissed its action against those parties. ECF Nos. 51, 53. Subsequently, on December 4, 2014,

the Western District of Virginia granted Southern's Unopposed Motion to Transfer Venue, ECF

No. 54, and transferred the case to the United States District Court for the Eastern District of Virginia. ECF No. 57.

On July 29, 2015, this Court held a hearing on a then existing Motion to Dismiss for Failure to State a Claim by BBC Chartering GmbH & Co. KG ("BBC"). ECF No. 100. The day before the hearing, Plaintiff filed a Motion for Leave to File a Second Amended Complaint specifically to bring in Freese, the entity which Southern had only then identified was the carrier that IEG had contracted with to originally carry the shovels from Newcastle to Hampton Roads. ECF No. 106. At the hearing, this Court granted Southern Coal's motion allowing for a Second Amended Complaint, and the Second Amended Complaint ("SAC") was filed. ECF No. 109.

The previous Motion to Dismiss by BBC, that was existing before the SAC was refiled after the SAC. ECF No. 117. This Court granted BBC's Motion to Dismiss on December 4, 2015. ECF No. 142. Additionally, on February 25, 2016, Southern Coal voluntarily dismissed its suit against Intermarine.

The MS "Anita" Kai Freese ("Freese") first appeared in this suit on November 16, 2016. ECF No. On December 1, 2015, Freese filed the present Motion to Dismiss for Failure to State a Claim and Improper Venue. ECF No. 139. Southern responded in opposition to Freese's motion on December 14, 2015. ECF No. 144. Freese replied in support of its motion on December 21, 2015. ECF No. 146. A hearing on this matter was held on February 9, 2016.

## II.    BRIEF STATEMENT OF FACTS

This Court has stated the factual history of this case on a number of occasions. The following facts are a series of alleged facts drawn from Plaintiffs' Second Amended Complaint.

Southern Coal, through its agent AAMAC, contracted with IEG to arrange for the shipping of mining shovels (the "Shovels") from Australia to Virginia. IEG is then claimed to have chartered space aboard the BBC RIO GRANDE ("RIO GRANDE" or "Vessel"), a vessel

owned and operated by MS "Anita" Kai Freese ("Freese") in order to ship the Shovels from Newcastle, Australia and deliver them to Norfolk, Virginia in early November 2011. In the Fall of 2011, Freese allegedly operated or managed the RIO GRANDE "through" Scan Trans Holding A/S ("Scan Trans"). The Shovels were in good order when they were loaded onto the RIO GRANDE for shipment.

By early November 2011, the RIO GRANDE was diverted to Masan, South Korea. When the Vessel arrived in Masan, the shovels were allegedly placed ashore, fully exposed to the weather. On November 18, 2011, IEG first advised Southern that the Shovels were in Masan, South Korea, having been landed there by the RIO GRANDE on or about November 7, 2011. On December 6, 2011, after several weeks ashore, the shovels were allegedly loaded aboard the MV CLIPPER NEW HAVEN (the "CLIPPER"), which was operated by BBC Chartering & Logistic GmbH & Co. KG ("BBC"). The notes of the Second Bill of Lading indicate that the shovels were already in bad shape prior to being loaded onto the CLIPPER. The Shovels were allegedly transported above deck and not adequately tarped or otherwise protected from the elements

On or about January 13, 2012, the CLIPPER arrived in Hampton Roads, Virginia and landed the Shovels the following day. Upon their arrival, however, Southern claims to have found the seawater and exposure to water badly damaged the Shovels. On January 21, 2014, Southern brought a suit in the Western District of Virginia against IEG, SENRAC, and GDL Enterprises. After two amended complaints the defendants remaining in this suit are IEG and Freese.

3

## IV.    MOTION TO DISMISS FOR IMPROPER VENUE

Freese appears to have been in error in filing its original Motion to Dismiss for Improper Venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure.   Freese's Rule 12(b)(3) motion was made on the basis of an arbitration clause operating as a specialized forum of forum-selection clause.   In this, Freese relied upon old Fourth Circuit precedent which stated, "a motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006).   While the old precedent was to look to whether the forum selection clause was enforceable and then dismiss or transfer if the Court found it was to allow the party to lodge it's complaint in the proper forum, this precedent is no longer good following the findings of the Supreme Court case Atlantic Marine.

In Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, the Supreme Court held that Rule 12(b)(3), "authorize[s] dismissal only when venue is 'wrong' or 'improper' in the forum in which it was brought." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 577 (2013). Whether venue is wrong or improper is governed by the provisions of 28 U.S.C.A. § 1391.   Under 28 U.S.C.A. § 1391(b), a civil action may be brought in: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

According to the Supreme Court, the proper analysis to when venue is challenged for dismissal is to look only to whether the case falls within one of the categories of § 1391(b) only.

Atl. Marine, 134 S. Ct. 577. If venue does fall within one of these categories, venue is proper; if not, venue is improper. Id. If venue is found to be improper the case must be dismissed or transferred under 28 U.S.C. § 1406(a), Id. However, in contrast to the previously existing precedent in this Circuit, "Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b). As a result, a case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)." Atl. Marine, 134 S. Ct. at 577. Where—as is here—the venue is proper,[1] the party must enforce the forum selection clause by another means other than Rule 12(b)(3). As such, the Court **CONSTRUES** this motion as a motion to compel arbitration.

## V.    MOTION TO COMPEL ARBITRATION

In the United States Court of Appeals for the Fourth Circuit, when determining whether to compel arbitration the court must consider two questions: "(1) did the parties have a valid agreement to arbitrate? If so, (2) does the arbitration agreement apply to the dispute at hand?" General Elec. Capital Corp. v. Union Corp Financial Group Inc., 142 Fed. App'x. 150, 152 (4th Cir. 2005). In considering these questions, the Court must take into account the national policy which strongly favors arbitration, specifically, that the Federal Arbitration Act requires that arbitration agreements be broadly interpreted and widely honored. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 627 (1985).

At the hearing and in briefing, both parties contend that the contract for carriage between them includes the Freese Booking Note and the Bill of Lading. ECF No. 159 at 3 and 4. Only the Freese Booking Note, which is in fact the Second Liner Booking Note in this case, lists Freese as

---

[1] The SAC clearly alleges, "Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because [the defendants] are subject to this Court's personal jurisdiction by virtue of their purposefully directing the ocean shipment giving rise to this action to the port of Hampton Roads, Virginia, located within this District, as further evidence by their issuing at least two separate bills of lading for the shipment at issue reflecting delivery to be made in Norfolk, Virginia." ECF No. 109 at ¶ 8. Freese does not appear to dispute the propriety of this venue on its face, rather only attempts to challenge venue by a forum selection clause operating through an arbitration clause.

the carrier. ECF No. 109, Ex. 2. The Freese Booking Note contains an agreement to arbitrate:

> **Clause 33: Jurisdiction and Arbitration**
> This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act of 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of the Clause.
> The arbitration shall be conducted in accordance with London Maritime Arbitrators Association (LMAA) Terms current at the time when arbitration proceedings are commenced.
> LMAA small claims procedure to apply for claims up to USD 50,000.

ECF No. 109, Ex. 2 at 5. This agreement, if valid, clearly states that any dispute arising from the contract between the parties must be submitted to arbitration in London and specifies the procedure governing the arbitration.

The Federal Arbitration Act supplies that written provision to settle by arbitration the controversies arising from the transaction or contract, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In briefing, Southern presented an argument that, "by dividing the carriage into two separate agreements, Freese made it impossible for Southern to sue the 'Carrier' in a single action and a single forum—a circumstance certainly not envisioned by Southern at the time the Freese Booking Note and the First Bill of Lading were executed." ECF No. 144 at 11. As such, Southern argues Freese's actions in creating an arbitration clause then allegedly materially breaching the contract, "Freese made it both impracticable and impossible for Southern to enforce its rights against the 'Carrier.'" ECF No. 144 at 11.

Here, the arbitration clause so clearly sets up how and where disputes arising from the contract may be addressed, no impossibility or impracticability is found to give rise to revocation. Additionally, Southern elaborated that as Freese had materially breached the contract it should not be able to shelter under the arbitration clause. The Court simply will not

invalidate an arbitration clause merely because the party seeking arbitration may have breached, for this would violate the strong federal policy in favor of arbitration.

The fact that the arbitration clause places arbitration in a foreign forum does not reduce its enforceability. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 636-37, 105 S. Ct. 3346, 3359, 87 L. Ed. 2d 444 (1985)("There is no reason to assume at the outset of the dispute that international arbitration will not provide an adequate mechanism. To be sure, the international arbitral tribunal owes no prior allegiance to the legal norms of particular states; hence, it has no direct obligation to vindicate their statutory dictates. The tribunal, however, is bound to effectuate the intentions of the parties."). Specifically in the context of the Carriage of Goods by Sea Act ("COGSA"), the Supreme Court has found that the wide sweeping provisions of COGSA did not invalidate foreign arbitration and that concerns that the parties would be unable to enforce their legal protections. Vimar seguros y Reaseguros, S.A. v. Sky Reefer 515 U.S. 528, 541 (1995)(hereinafter "Sky Reefer").   As such, this Court finds that it must compel the arbitration of the contract and related claims between Southern and Freese.

Crucial to the Court's willingness to enforce arbitration in both Mitsubishi and Sky Reefer cases was the retention jurisdiction over the suit for the award-enforcement stage as it critically gave the court the opportunity to address the public policy concern of ensuring the laws of the United States were enforced appropriately. Mitsubishi, 473 U.S. at 638 ("Having permitted the arbitration to go forward, the national courts of the United States will have the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of the [United States laws at issue] has been addressed."). As discussed Sky Reefer, "Were there no subsequent opportunity for review and were we persuaded that 'the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to

pursue statutory remedies..., we would have little hesitation in condemning the agreement as against public policy.'" Sky Reefer, 515 U.S. at 540 (quoting Mitsubishi, 473 U.S. at 638). While Fourth Circuit precedent in Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc. suggests that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable," given the Court's continuing interest in overseeing the enforcement foreign of the arbitration award and reviewing at this stage any public policy defense, dismissal would be inappropriate for these claims. 252 F.3d 707, 709-10 (4th Cir. 2001). Accordingly, this Court finds that in compelling arbitration of the claims between Southern and Freese, it must stay the suit between the parties and retain jurisdiction during the pendency of the foreign arbitration.

Compelled arbitration of the claims against Freese does temporarily bifurcate the present suit. While the separation of the defendants is not ideal, the Supreme Court has explicitly discussed that where there exist both arbitrable and non-arbitratable claims, the arbitrable claims must be submitted to arbitration pursuant to the Federal Arbitration Act and the strong public policy of enforcing arbitration clauses. KPMG LLP v. Cocchi, 132 S. Ct. 23, 24 (2011). Specifically, the Court considered the even where the submission of arbitrable would separate the dispute into multiple forums:

> The Act has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation. From this it follows that state and federal courts must examine with care the complaints seeking to invoke their jurisdiction in order to separate arbitrable from nonarbitrable claims. A court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration.

Id. (citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 217 (1985)).

This Court, however, is reluctant to proceed with the bifurcated suit during the arbitration, and, as such, stays the additional claims of the suit against IEG which are not subject

to the arbitration clause of the Freese Booking Note. Accordingly, this Court finds it proper to stay the entirety of the suit until arbitration of the claims between Southern and Freese is complete or for a maximum six months, whichever is sooner.

## VI.    CONCLUSION

For the reasons stated above, this Court **CONSTRUES** Freese's "Motion to Dismiss Count VI of Plaintiff's Second Amended Complaint" as a Motion to Compel Arbitration, **GRANTS** the motion to compel arbitration, and **STAYS** the claims against Freese pending arbitration. ECF No. 139. Additionally, the remaining claims of the Second Amended Complaint against IEG are hereby **STAYED** for the shorter of six months or completion of the said arbitration.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED**.

/s/
Robert G. Doumar
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, VA
February 26, 2016